# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

**ONE APPLE IPHONE IN VIOLATION OF 21 U.S.C. § 846**

)
)
)
)
)

Case No. 22-sw-210

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of Fentanyl and other Controlled Substances |
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute Fentanyl and other Controlled Substances |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of Drug Trafficking |

The application is based on these facts:

See Attached Affidavit in support of Search Warrant, which is incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*David L. Crosby*

*Applicant's signature*

David Crosby, Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 07/05/2022 _____

*Judge's signature*

City and state:  District of Columbia

G. Michael Harvey, United States Magistrate Judge

*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❑ Original      ❑ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>ONE APPLE IPHONE IN VIOLATION<br>OF 21 U.S.C. § 846 | )<br>)<br>)<br>)   Case No.  22-sw-210<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Columbia
*(identify the person or describe the property to be searched and give its location):*
   See Attachment A, incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
   See Attachment B, incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ July 19, 2022 _____ *(not to exceed 14 days)*
  ❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ G. Michael Harvey _____ .
                                          *(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
  ❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:   07/05/2022 _____      _____
                                                                *Judge's signature*

City and state:   District of Columbia _____     G. Michael Harvey, United States Magistrate Judge
                                                                *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  22-sw-210 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

                                               _____
                                                     *Executing officer's signature*

                                             _____
                                                       *Printed name and title*

## ATTACHMENT A

## Property to Be Searched

One Red Apple iPhone, with phone number (240) 557-9804, IMEI: 356807110816970.
This item is uniquely identified as DEA Exhibit N-20. The phone is currently in the
custody of the DEA.

 

## **ATTACHMENT B**

*Property to be seized*

The items, information, and data to be seized are fruits, evidence, information relating to, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 21 U.S.C. §§ 841 (Distribution of Fentanyl and other Controlled Substances) and 846 (Conspiracy to Possess with Intent to Distribute Fentanyl and other Controlled Substances), and 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of Drug Trafficking) (hereinafter the "TARGET OFFENSES"), as described in the search warrant affidavit, including, but not limited to:

1. Records and information relating to, or evidencing commission of, the TARGET OFFENSES;

2. Records and information relating to the possession and/or sale of narcotics;

3. Records or information relating to the possession of firearms or use of firearms in furtherance of drug trafficking;

4. Records and information relating to the location where narcotics are being stored;

5. Records and information relating to property used in connection with commission of the TARGET OFFENSES;

6. Records and information relating to communications between individuals concerning one or more of the TARGET OFFENSES;

7. Records and information relating to proceeds obtained from the commission of the TARGET OFFENSES or the means used to purchase narcotics;

16

8. Records and information related to the identity or location of perpetrators, aiders and abettors, coconspirators, and accessories after the fact concerning the TARGET OFFENSES;

9. Records and information related to the email addresses, phone numbers, social media account identifiers used by perpetrators, aiders and abettors, coconspirators, and accessories after the fact concerning the TARGET OFFENSES;

10. Records and information that constitute evidence of the state of mind of Justice Eastman, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation;

11. Records and information that constitute evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with Larry Eastman about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts.

12. evidence of who used, owned, or controlled the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence;

13. evidence of software, or the lack thereof, that would allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

17

14. evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence;

15. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s);

16. evidence of the times the Device(s) was used;

17. passwords, encryption keys, and other access devices that may be necessary to access the Device(s);

18. documentation and manuals that may be necessary to access the Device(s) or to conduct a forensic examination of the Device(s);

19. records of or information about Internet Protocol addresses used by the Device(s); and

20. records of or information about the Device(s)'s Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF ONE APPLE IPHONE IN VIOLATION OF 21 U.S.C. § 846** | Case No. 22-sw-210<br><br>**Filed Under Seal** |

*Reference:      USAO Ref. #  2021R00992*
*Target Device: (240) 557-9804, IMEI: 356807110816970 (Exhibit N-20)*

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, David L. Crosby, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—a digital device—which is currently in law enforcement's possession (the "**TARGET DEVICE**"), as described in Attachment A, and the extraction from that property of electronically stored information as described in Attachment B.

2.      I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. Specifically, I am a Special Agent with the Drug Enforcement Administration, and have been since August 1991. I am presently assigned to the Washington Division Office, Task Force Group 34 of DEA.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other officers, agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 (Distribution of Fentanyl and other Controlled Substances) and 846 (Conspiracy to Possess with Intent to Distribute Fentanyl and other Controlled Substances), and 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of Drug Trafficking) (hereinafter the "TARGET OFFENSES") have been committed by Justice Eastman, Larry Eastman, and other unknown individuals. There is also probable cause to search the **TARGET DEVICE** described in Attachment A for the items described in Attachment B.

5.  Based on your Affiant's training, experience, and participation in investigations, and the training and experience of other law enforcement agents with whom your Affiant is working on this investigation, your Affiant knows that:

a.  It is common for individuals engaged in the illegal possession and distribution of narcotics to use telephonic communications, both cellular (to include voice and text messages) and hard line, to further their criminal activities by coordinating the distribution and acquisition of narcotics, illegal proceeds of such trafficking, and other efforts of co-conspirators;

b.  Individuals engaging in the illegal trafficking/possession of narcotics use cellular telephones and cellular telephone technology to communicate and remain in contact with customers or possessors of those narcotics; and

c.  Individuals who engage in the illegal trafficking/possession of narcotics use cellular telephones to exchange information with customers and/or sources of supply through text messaging and instant messaging in addition to direct telephone conversations. It is also common for narcotics traffickers/possessors to send photographs and videos as exchange of information with customers and/or source(s) of supply.

2

d. Cellular telephones used by narcotics traffickers/possessors contain valuable information and evidence relating to their activities. Such information consists of, but is not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data. This information can: (i) reflect the preparation for, arrangement of, and commission of the trafficking; (ii) identify locations where traffickers traveled to before and after transporting or selling contraband; (iii) reflect the ownership and use of the cellular telephones and firearms by the traffickers; (iv) document meetings and communications between traffickers, their customers, associates, and co-conspirators; (v) reflect communications between traffickers and other individuals, discussing the trafficking and possession of firearms; (vi) reflect communications between traffickers and other individuals who may have assisted or provided support in the trafficking or possession of the firearm(s); (vii) document or contain evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of contraband relating to the trafficking; and (viii) document or contain evidence of the purchase of items from the assets derived from the trafficking of contraband.

e. Individuals involved in narcotics trafficking/possession often use cellphone cameras to take video recordings and photographs of themselves or other members of the organization often engaging in their illegal activities.

**TECHNICAL TERMS**

2.     Based on your affiant's training and experience, I use the following technical terms to convey the following meanings:

a.      Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS: A GPS navigation device uses the global positioning system to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The global positioning system consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and

5

are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

       f.     IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

       g.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

3.     Based on your Affiant's training, experience, and research, your Affiant knows that devices, similar to the **TARGET DEVICE**, have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In

6

your Affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggest who possessed or used the device.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

4.     Based on your Affiant's knowledge, training, and experience, your Affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

5.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crime(s) described on the warrant, but also forensic evidence that establishes how a Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on a Device because:

   a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

6.      *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

7.      *Manner of execution.* Because the devices are currently secure in law enforcement custody, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night. Further, because this warrant seeks permission to examine an already-seized device, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

8

**PROBABLE CAUSE**

8.      On January 18, 2022, a federal grand jury returned a three-count indictment against Defendants Larry Eastman and Justice Eastman charging them with: conspiracy to distribute fentanyl (from September 2020 to at least April 5, 2021); distribution of fentanyl resulting in serious bodily injury (from on or about October 31, 2020 to November 1, 2020); and distribution of fentanyl resulting in the death of a victim (April 5, 2021). A background of the investigation is as follows:

**A.  The Overdose Resulting in Death**

6.      On April 6, 2021, a female victim was found dead in her Washington D.C. apartment from an apparent overdose. From a nearby coffee table, agents observed powder formed into a line for snorting. The DEA analyzed the substance and determined it to be fentanyl. An autopsy determined the Victim's cause of death was acute fentanyl intoxication.

7.      Agents examined the Victim' phone and found text messages from the previous evening (around 11:00 p.m. on April 5th) with a contact listed as "Larry." The phone number for contact "Larry" is subscribed to Defendant Larry Eastman with a listed address of 2324 Raynolds Place, SE, Washington D.C. The text messages reveal a conversation in which the Victim asked Larry for "jammers".[1] Larry then stated that he was not at home, but that his "man" could assist in providing the narcotics. He then directed the Victim to 2324 Raynolds Place SE and provided a Cash App account ("$princessjaee202") to make payment.

8.      A subpoena to Cash App revealed that "$princessjaee202" is listed to Defendant Justice Eastman with a listed address of 2324 Raynolds Place, SE, Washington DC. Records

---

[1] The term "jammers" or "percs" has been used on the street to refer to blue pills, often counterfeit for Oxycontin, that contain fentanyl.

from the D.C. Public Housing Authority reveal that Larry and Justice Eastman are listed as residents on the lease at 2324 Raynolds Place, SE, Washington D.C.[2]

9.      A subpoena for the Victim's Lyft account revealed that she traveled to 2324 Raynolds Place on the evening of April 5th, the night before her overdose. The time of the Victim's trip corresponds with the timing of her text messages with Larry Eastman. Call detail records for Larry Eastman also reveal that Larry placed a call to Justice Eastman while he was brokering the drug deal with the Victim (and directing the Victim to send payment to Justice Eastman's Cash App). Cash App records reveal that Lynch paid Justice Eastman $30 after being directed to do so by Larry Eastman. Cell-Site data for Justice Eastman reveals that she was located within the cell-site area for Raynolds Place when: 1) Larry called Justice; b) the Victim paid Justice via Cash App, and c) the Victim arrived at Raynolds Place to pick up the drugs. After the transaction, call detail records show that there was one additional telephone call between Larry and Justice Eastman, indicating that the two spoke to confirm the deal was complete.

**B.  The Overdose Resulting in Substantial Bodily Injury**

10.     During the course of their investigation, your affiant learned that the Victim had previously overdosed on November 2, 2020, approximately five months before her death. On that date, the Victim's mother found her unresponsive in her apartment and called 911. Paramedics responded to the scene and administered Narcan (which is a medication designed to rapidly reverse an opioid overdose). On November 3, 2020, in the early morning hours, the

---

[2] Over the course of the investigation, agents learned that on November 30, 2021, Larry Eastman moved to an apartment with his girlfriend on Good Hope Avenue in Temple Hills, Maryland. Nonetheless, cell-site location data for Eastman's phone reveals frequent travel between the Maryland Apartment and 2324 Raynolds Place up until the date of his arrest.

Victim was admitted to United Medical Hospital. The ER treating physician informed the DEA that the Victim's overdose was most likely caused from fentanyl. In addition, your affiant interviewed a witness who indicated that he found several small blue pills in Lynch's apartment after the overdose. These pills are consistent with fake OxyContin pills containing fentanyl and are also consistent with photos of pills contained on each Defendant's iCloud accounts, as well as pills seized from their residences upon arrest).

11.     A review of Cash App records reveal that the Victim paid "Michelle 24" (which is another Cash App account subscribed to Justice Eastman) on October 31st and November 1st, immediately preceding the Victim's overdose on November 2nd. A review of the Victim's phone does not reveal any other suspected drug purchases (or conversations about obtaining drugs) from anyone other than Larry Eastman. Indeed, when the Victim's mother expressed concern to her daughter about her drug use shortly before her overdose on October 30, 2020, the Victim identified her "dealer" as "Larry" who was located in Woodland. 2324 Raynolds Place (the location where Larry directed Lynch to pick up drugs) is located in the Woodland Terrace Public Housing Project.

### C.  The Broader Conspiracy

12.     A review of toll records and cell-site records for the Victim reveal calls to Larry Eastman (and trips to 2324 Raynolds Place) dating back to September 2020, which is the start date of the conspiracy. A review of the Victim's Cash App payments showed that on November 5, 2020, the Victim received a "request" for $213 from Michelle24 with the notation "For Larry". A review of the Victim's Cash App account shows nine (9) payments to Michelle24 between October 6, 2020 and November 19, 2020. The account for "Michelle24" is listed to Justice M. Eastman with a listed address of 2324 Raynolds Place, SE, Washington DC.

13.     In addition, a search of both defendants' iCloud accounts reveals evidence of drug dealing. In fact, Larry Eastman actually saved text message conversations with the Victim evidencing various narcotics sales dating back to October 10, 2020. In addition, Larry's iCloud account contains photos of him with fake OxyContin (fentanyl) and large amounts of cash near 2324 Raynolds Place.

**D.  Previous Search Warrants at 2324 Raynolds Place SE, Washington DC**

14.     On September 1, 2021, a DC Superior Court search warrant (2021CSWSLD2837) was executed at 2324 Raynolds Place SE, Washington D.C. by members of the Metropolitan Police Department.  In a subsequent search of the location 204 pills were located which had the appearance of Oxycodone 30 mg pills.  The seized pills were subsequently sent to the DEA Mid-Atlantic Laboratory and found to contain 24.48 grams of fentanyl and fentanyl analog. Also, found in the search warrant were several pistols and rifles.  Justice Eastman was present at 2324 Raynolds Place at the time of this search warrant, but was not arrested.

15.     On December 4, 2021, a DC Superior Court search warrant (2021CSWSLD3901) was executed at 2324 Raynolds Place SE, Washington D.C. by members of the Metropolitan Police Department.  In a subsequent search of the location, 22 pills were located which had the appearance of Oxycodone 30 mg pills.  The seized pills were subsequently sent to the DEA Mid-Atlantic Laboratory and found to contain 2.34 grams of fentanyl. Again, found in the search were several pistols.

**E.  Defendants' Arrests and Seizure of the TARGET CELL PHONE**

16.     On the date of each Defendant's arrest, January 26, 2022, agents obtained additional evidence of drug trafficking from each Defendant's current residence. From the Maryland residence (where Larry was living with his girlfriend), agents seized three large bags

of marijuana and two bags of pills (including 80 counterfeit OxyContin pills containing fentanyl and 19 pills of counterfeit Xanax) from on top of the kitchen counter. From 2324 Raynolds Place (where Justice Eastman resides and Larry Eastman travels on a regular basis), agents seized another two bags of pills (including 7 counterfeit OxyContin pills containing fentanyl and 6 pills of counterfeit Xanax).

17.     At this time of her arrest, Justice Eastman was in possession of the **TARGET DEVICE**.  Justice Eastman refused to speak to law enforcement after her arrest.

18.     The search warrant for 2324 Raynolds place (21-sw-10), which was signed by U.S. Magistrate Judge Harvey, authorized the search of electronic devices seized from the residence, which would include the **TARGET DEVICE**. Although the warrant authorizes the search of the **TARGET DEVICE**, the warrant did not explicitly list that all information pertaining to the TARGET OFFENSES could be seized from the phone. Accordingly, your Affiant is submitting this warrant application in order to explicitly outline all of the information that can be seized from the **TARGET DEVICE**.

19.     Based on the pills found in 2324 Raynolds Place and Larry Eastman's residence, your Affiant believes that there was a continuing conspiracy to sell narcotics up until the date of his arrest. In addition, your Affiant believes that there will be evidence of Justice Eastman's continued involvement in this conspiracy on the **TARGET DEVICE** as well as information pertaining to the TARGET OFFENSES.

13

## **CONCLUSION**

20.     I submit that this affidavit supports probable cause for a warrant to search the

**TARGET DEVICE,** as described in Attachment A, and to seize the items described in

Attachment B.

Respectfully submitted,

*David L. Crosby*

David L. Crosby
Special Agent
Drug Enforcement Administration

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July 5, 2022.

HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

14